# Weaver *v.* The State.

## *Murder.*

(Decided June 1, 1911. Rehearing denied June 30, 1911. 56 South
749.)

APPEAL from Bessemer City Court.

Heard before Hon. J. C. B. GWIN.

The following opinion was filed on application for
rehearing, and should be read in connection with the
former report of this case found in 1 C. of A. 48; 55
So. 956.

PELHAM, J.—The defendant's application for a re-
hearing, extensively argued by brief, is based upon two
propositions, one of which was given no particular
prominence, but scant attention, indeed, in the well-
prepared original brief filed, 14 pages in length.

The first insistence is that the defendant should have
been allowed to offer certain evidence explanatory of
flight by the witness White. The questions to which
objections were sustained that defendant complains of
were: "Did the defendant conceal himself while there?"
and "Did not the defendant visit his grandfather in

open daylight, going along the public road in Tuscaloosa county?" The defendant, in testifying in his own behalf, before the witness White had been introduced as a witness, had admitted his (defendant's) flight immediately after the killing, and offered no explanation whatever of his flight. True he testifies he did not *run* away, but *walked* off to his grandfather's in the adjoining county, but he admits he left right after the killing, stayed out in the woods all night, and then "walked" to his grandfather's next day. He neither made nor offered to make any explanation. That the defendant should afterwards offer to prove by the witness White his conduct while at his grandfather's two or three days after his admitted and unexplained flight gave no indication to the trial court that the purpose was to offer circumstances explanatory of flight. And in fact such evidence could have no tendency to rebut or explain the fact of the admitted flight, and could only be in rebuttal of concealment after flight—a proposition upon which no evidence had been introduced. Besides, there was no error committed in sustaining objections to these questions, as they were leading and suggestive, and the trial court can never be put in error for sustaining objections to such questions.—*Hill v. State,* 156 Ala. 3, 46 South. 864; *Pitman v. State,* 148 Ala. 612, 42 South. 993; *Reaves v. State,* 158 Ala. 5, 48 South. 373.

The second proposition is that the defendant's witness Jeff Levi should have been allowed to answer the questions asked him by defendant on direct examination, as follows: "Was the deceased at that time quarrelsome" and "Was the deceased at that time in a quarrelsome mood, during the seven minutes immediately preceding the shooting?" to which questions the court sustained the state's objections. This quarrel-

someness and quarrelsome mood had reference to a period or duration of time exceeding some seven minutes preceding the fatal difficulty; and, while we appreciate that the authorities have gone to considerable length in permitting opinion statements by witnesses in testifying to the appearance and demeanor of persons from observation, we must not lose sight of the fact that the reason for the rule making this kind of evidence permissible is that better evidence is not obtainable, and that the witness may give the opinion of an impression produced upon his mind, because a description of the facts producing the impression is impossible or difficult of narration. The questions in point here call for more than a mere shorthand rendering of facts, or such an opinion as a witness may give under the recognized exceptions to the general rule against the permissibility of opinion evidence; these questions call for the mental status, the *mood* in which the deceased was, extending over a period of seven minutes time. How he evidenced such a quarrelsome mood during that length of time was certainly susceptible of narration. He must have said or done something during that seven minutes to indicate to the witness his quarrelsome mood; he could not alone have *looked* a quarrelsome mood for seven minutes, and what he did or said were facts that should have been given to the jury, that they might draw the proper inference from them.

The cases considering this question of opinion testimony are numerous, and we will only refer to them in a general way. In *Prince's Case,* 100 Ala. 144, 14 South. 409, 46 Am. St. Rep. 28, cited by the appellant, a witness was allowed to testify that the defendant "seemed much excited," and in *Jenkins' Case,* 82 Ala. 25, 2 South. 150, it was held permissible for a witness to state that the defendant "appeared like he was mad,"

while in *McAdory's Case,* 59 Ala. 92, also cited by appellant, the holding of the court seems opposed to appellant's contention, as the statement of the witness that the defendant "looked downcast" was held inadmissible; but this case is said by the court, rendering the opinion in the case of *Thornton v. State,* 113 Ala. 43, 21 South. 356, 59 Am. St. Rep. 97, to be departed from, as are also the rules laid down in the decisions in *Gassenheimer's Case,* 52 Ala. 313, where a witness was not allowed to state that the defendant "looked excited," and the case of *Johnson v. State,* 17 Ala. 618, where it was held error to allow a witness for the state to testify that the defendant "looked serious." In *Miller's Case,* 107 Ala. 40, 19 South. 37, that the defendant "appeared to be angry" was held competent, and in the case of *Reeves v. State,* 96 Ala. 33, 11 South. 296, that the defendant "was talking mad," and "trying to fight," were permissible statements, and in *Thornton's Case, supra,* that the defendant "looked frightened" was allowed; while in *Coleman's Case,* 87 Ala. 14, 6 South. 290, it was held not permissible to allow a witness to testify that the defendant was "restless, nervous, and excited." In *Lewis' Case,* 96 Ala. 6, 11 South. 259, 38 Am. St. Rep. 75, a witness was not permitted to testify that the deefndant "seemed afraid." Since the ruling in *Thornton's Case, supra,* the Supreme Court has held, in *Knight's Case,* 160 Ala. 58, 49 South. 764, that the question, "Was that said through a spirit of friendliness?" manifestly calls for an opinion or conclusion of the witness, and was not allowable; and it was also ruled in *H|eningburg's Case,* 153 Ala. 13, 45 South. 246, that a witness could not testify as to whether a person acted like a crazy man; and in *Bettis' Case,* 160 Ala. 3, 49 South. 781, a witness was not allowed, on the ground that it was an opinion, to state that a person

[Weaver v. The State.]

attempted to carry out a threat. And so there are many other rulings by the court along this line which it is unnecessary for us to discuss or cite here, but, as said by that eminent jurist, Chief Justice Brickell, in rendering the opinion of the court in the case of *Gassenheimer v. State, supra:* "Opinions of witnesses as to the conduct or appearance or demeanor of others are never very reliable, and should never be received when better evidence is attainable. It is never very satisfactory, though it may be more difficult for them to state facts, and let impartial and sworn triers of facts form and express the opinion."

The questions propounded in this case, calling for an opinion of the witness, we think, fall within the inhibition of the rule against giving opinion testimony when the narration of facts could have been given, from which the jury could, as was their province, draw the conclusion.

It was clearly in the discretion of the primray court to permit or refuse these questions calling for an opinion, aside from the question of their inadmissibility for that reason, as they were leading questions, put by a party to his own witness; and the discretion of the court in refusing or allowing them is not revisable on error here.—*Blevins v. Pope,* 7 Ala. 371; *Sayre v. Durwood,* 35 Ala. 247; *Gassenheimer's Case, supra; Pitman v. State,* 148 Ala. 612, 42 South. 993; *Hill v. State,* 156 Ala. 3, 46 South. 864.

The application for a rehearing is denied.

Denied.