# Davis *v.* The State.

## *Murder.*

(Decided June 30, 1914.  66 South. 67.)

1. *Homicide; Evidence.*—Where it appeared that deceased had made an attack upon defendant about thirty minutes before the killing occurred. the court properly excluded testimony going into details of the previous difficulty. as such testimony did not have a tendency to sustain defendant's plea to self-defense, but did have a tendency to bring into the case collateral matter.

2. *Same; Declarations.*—Where the homicide occurred in a store, evidence that defendant, after having a difficulty with deceased at a mill at which they worked, returned home and informed his wife that he was going to the store to settle his account, was admissible to explain his presence at the store, and to rebut an inference of intent and premeditation; such declaration not being inadmissible because of the fact that it was in the nature of a self-serving declaration.

3. *Same.*—Where the state had introduced evidence to show that defendant dropped a knife near the body of deceased after the killing.

[Davis v. The State.]

and defendant claimed that deceased had assaulted him with a knife, a witness for defendant could not testify that another person who had left the country and did not appear at the trial, attempted to induce him to testify that the knife belonged to defendant; such evidence being admissible only for the purpose of impeaching such other person who was not a witness.

4. *Same; Instructions; Burden of Proof.*—The state is not bound to prove that deceased was free from fault in bringing on the fatal encounter, although the jury may believe that a state of facts existed which put upon the state the burden of showing that defendant was in fault.

5. *Same.*—Where there were only two alternative fiindings possible —that accused killed deceased before the latter made any demonstration, or that deceasd made an assault upon defendant with a deadly weapon—instructions on the right of a party to act upon the reasonable appearance of danger, were properly refused.

6. *Same; Self-Defense.*—Ordinarily, a person attacked with murderous intent is not bound to retreat, unless he can do so without increasing his peril, but that rule does not obtain where he provokes the difficulty; hence, where defendant claims that he killed in self-defense, a charge on the duty to retreat which omits the qualification that he could do so without increasing his peril was properly refused.

7. *Same.*—Where a defendant fired the fatal shot as a result in part of sudden passion aroused by a blow, though he entertained malice, the fact of the sudden passion did not reduce the offense to manslaughter.

8. *Same.*—Where the state asserted that defendant went to the store for the purpose of provoking the difficulty, and there killed deceased, the refusal of an instruction that defendant had the right, under the law, to go to the store, was not error.

9. *Charge of Court; Reasonable Doubt.*—A charge asserting that the jury should acquit if there was a probability of defendant's innocence, was properly refused as not being predicated upon the evidence.

10. *Same.*—A charge assserting that if from the evidence there is a probability of defendant's innocence, the jury should find him not guilty, even though it has no reasonable doubt from the evidence that defendant is guilty, is self-contradictory, and properly refused.

11. *Same; Abstract.*—Where there was nothing in the evidence affording an inference that any witness had exhibited at the trial or elsewhere, prejudice or anger against defendant, charges on the right of the jury to disregard the evidence of witnesses exhibiting prejudice or anger, were properly refused as abstract.

12. *Same; Applicability to Evidence.*—It is always proper to refuse charges which are not predicated upon or supoprted by the evidence.

13. *Appeal and Error; Harmless Error; Evidence.*—The exclusion of evidence of a witness who had known defendant for some time that he never saw defendant use anything but a small pearl handled knife, different from the one found near deceased, was harmless, although erroneous under the particular facts in this case.

(McCellan, Sayre and Somerville, JJ., dissent in part.)

APPEAL from Shelby County Court.

Heard before Hon. E. S. LYMAN.

Walter Davis was convicted of murder, and he appeals. Reversed and remanded.

The following charges were refused to defendant:

(2) "If, from the evidence in this case, there is a probability of defendant's innocence, the jury should find him not guilty, even though the jury has no reasonable doubt from the evidence that defendant is guilty."

(3) "If any of the state's witnesses have exhibited prejudice or anger against defendant and satisfied you that they have not testified truly and are not worthy of belief, and you think their testimony should be disregarded, you may disregard it altogether."

(4) "If there is a probability of defendant's innocence, you should acquit him."

(6) "If any of the state's witnesses," etc., as in charge 3.

(13) "If you believe from the evidence that deceased and J. W. Howard were acting in concert, and that the killing was the result of a sudden blow inflicted by Howard, which aroused defendant's sudden action, or if they have a reasonable doubt as to whether the killing was the result of passion, suddenly aroused by the blow on defendant by said Howard, if they believe that deceased and Howard were acting in concert, you can't find defendant guilty of murder."

(19) "If defendant, Walter Davis, shot Jim Watters under a bona fide belief that he was in impending danger of life or limb, and that he had, under all the circumstances, reasonable cause to believe that he was in imminent danger at the time the shooting was done, it would be immaterial whether there was danger or not."

(27) "The law does not impose, upon a person attacked with murderous intent, the duty to retreat unless the

evidence in the case shows the person could have retreated without increasing his peril."

(30) "It is not necessary, under the evidence in this case, that defendant should have actually been in danger of death or great bodily harm at the time he killed Jim Watters, or that retreat would have increased his danger, in order for him to have been justified in shooting Jim Watters."

(33) "If the killing was the consequence of passion suddenly aroused by a blow given, they cannot convict defendant of murder."

(36) Same as 30, and adds: "He had a right to act on the appearance of things at the time, taken in the light of all the evidence, and if the circumstances attending the killing are such as to justify a reasonable man in the belief that he was in danger of great bodily harm or death, and that he could not have retreated without adding to his peril, and he honestly believed such to be the case, then he had a right to shoot Jim Watters in his own defense, although, as a matter of fact, he was not in actual danger, and retreat would not have endangered his personal safety; and, if the jury believe that defendant acted under such conditions and circumstances above set out, the burden of showing that he was not free from fault in bringing on the difficulty was on the state, and, if not shown, you should acquit defendant."

(37) Practically the same as 36.

(38) "It is not necessary, under the evidence in this case, that defendant should have been actually in danger of death or great bodily harm at the time he killed deceased. He had the right to act on the appearance of same at the time, taken in the light of all the evidence, and he had the right to interpret the conduct of deceased in the light of any threats that the evidence proves de-

ceased to have made against him. If the circumstances of the killing were such as to justify a reasonable man in the belief that he was in danger of great bodily harm" (and concluding as does charge 36).

(A) "The burden is on the state to prove to you, beyond all reasonable doubt, that defendant was at fault in bringing on the difficulty, and that deceased was not at fault in bringing on said difficulty, provided that defendant has reasonably satisfied you from the evidence that deceased was making an effort to get at defendant with a knife, and defendant honestly believed that his life was in danger, and he shot under such belief, and there was no reasonable mode of escape for defendant without increasing his peril."

(E) "This defendant had a right, under the law to go to the store where the fatal difficulty occurred."

RIDDLE & ELLIS, for appellant. The court erred in excluding the details of the former difficulty, as it was near in point of time and shed light on the question as to who was the aggressor.—*Watts v. State,* 59 South. 270. A person going to a particular place may have evidence of his statement explanatory of the object he had in view in so setting out.—*Kilgore v. Stanley,* 90 Ala. 523; *Pitts v. Burroughs,* 6 Ala. 733. If there is a probability that defendant is innocent under the evidence, he should not be convicted.—*Bones v. State,* 23 South. 138; *Croft v. State,* 95 Ala. 3. The jury may disregard the testimony of witnesses who exhibit prejudice or anger against defendant.—*Adams v. State,* 57 South. 591; *Jackson v. State,* 57 South. 596; *Naugher v. State,* 60 South. 458. The charges on self-defense should have been given.—*Jackson v. State,* 77 Ala. 18; *Green v. State,* 143 Ala. 2; *Blewett v. State,* 151 Ala. 41; *Snyder v. State,* 145 Ala. 43.

R. C. BRICKELL, Attorney General and T. H. SEAY, Assistant Attorney General, for the State.

SAYRE, J.—Defendant killed one Watters by shooting him with a pistol, was convicted of murder in the first degree, and sentenced to imprisonment for life.

Defendant admitted the killing, which indeed had been committed in a store at Siluria and had been witnessed by a number of people, and sought to excuse himself on the ground of self-defense.

Defendant was allowed to show that about 30 minutes before the killing, and while he and deceased were waiting to be paid off at the mills in the neighborhood where they worked together, deceased had made an attack upon him and threatened him with a mill hammer. This testimony, going to show the fact and general nature of a previous difficulty, was not objectionable to the state, for one tendency of it was to prove defendant's motive and malice; it may also have served a proper purpose for defendant, if the jury had been in doubt whether to accept his version of the circumstances of the encounter (*Beasley v. State,* 181 Ala. 28, 61 South. 259), but, when defendant sought to go further into proof of the details and merits of the previous occasion, the state's objections were properly sustained, on the grounds of administrative necessity, and because the merits of defendant's plea were not dependent upon the inquiry whether defendant or deceased had been at fault in the previous difficulty (1 Mayf. Dig. §§ 331, 377, et seq.). If the evidence of this previous difficulty may have served any legitimate purpose of defendant in the way of showing that the deceased was the aggressor on the occasion of the fatal encounter, he had the full benefit of all he was entitled to prove in that connection.—*Watts v. State,* 177 Ala. 24, 59 South. 270.

Counsel for the defendant, examining defendant as a witness in his own behalf, proposed to have him testify that on setting out from his home to the store, before the killing, but after the difficulty at the mill, he had said to his wife that he was going down to the store to settle his account. Defendant cites a line of cases beginning with *Pitts v. Burroughs*, 6 Ala. 733, and ending with *Madox v. State*, 159 Ala. 53, 48 South. 689, to show that there was error in the court's exclusion of this evidence of the witness' previous declaration under the circumstances stated. The rule outlined in these cases is that declarations made by the actor or party concerned, at the time an act is done, and which explain the quo animo and design of the performance, may, whenever the nature of the act is called in question, be given in evidence as part of the res gestæ. Another rule of evidence is stated in *Williams v. State*, 105 Ala. 96, 17 South. 86, in this language: "Exculpatory declarations of a defendant charged with crime are never admissible in his favor, unless they are within and constitute a part of the res gestæ of some situation, condition, or fact which is itself relevant to the issue of guilt vel non."

Evidence of defendant's declaration under the circumstances and to the effect stated above was offered on the theory, we suppose, that the fact that defendant went from his home to the store where the killing was done was relevant to the issue of guilt vel non, and that the declaration itself tended to exculpate accused by rebutting the inference of malice or a design to take the life of deceased, formed before the act. If there had been any issue as to whether defendant was at the store and committed the deed charged against him, the fact of his declaration upon setting out that he intended to go to the store would have been an inculpatory admission provable against defendant, as all such admissions are.

But defendant did not deny his presence at the store, nor, as we have already stated, did he deny the killing; he claimed only that he acted in self-defense. In this state of the case, so much of the declaration as indicated that he was going to the store was of no consequence whatever. It was important, however, that defendant's mental attitude towards deceased at the time of the act charged should be known, and to this end competent evidence of his previous attitude towards deceased, whether hostile or friendly, was admissible on the theory of the probable continuity of mental state for a reasonable length of time. So the only question of any interest to the parties, in view of the defense interposed, is whether defendant's declaration that he intended to settle his account at the store had any tendency to establish his mental attitude towards deceased then or later, or to shed light upon the mental constituents of his act in killing deceased. Whether defendant intended or not to settle his account at the store was of course of no consequence in this connection, for his intention in that respect did not include or exclude, necessarily or inferentially, any intention whatever with respect to deceased. The mere fact that defendant was present at the store before the homicide, or this fact, in connection with his previously expressed intention to settle his account, in view of the issues raised by the only defense interposed, was not a circumstance of any consequence, did not tend in the slightest to show that defendant took the life of deceased only after he had been driven to the wall by an attack upon him, for that depended upon what deceased did at the time. Nor did these facts or either of them tend at all to rebut the presumption of malice drawn by the law from the confessedly intentional subsequent use of a deadly weapon, nor even to affect the grade of the murder committed by way of tending to show that the act

was done without premeditation or deliberation, for the law of this state is that if, before striking the fatal blow, the slayer has time to think, though it be only an instant, even a single moment, and does think, and, after having thought, strikes the blow as the result of an intention to kill, produced by even such momentary operation of the mind, there is deliberation and premeditation, within the meaning of the statute defining murder in the first degree.—*Daughdrill v. State,* 113 Ala. 7, 21 South. 378. It seems reasonably clear, therefore, in the circumstances of this case, that defendant's declaration, made upon setting out from home, to the effect that he intended to settle his account at the store, shed no more light upon issues of fact controverted at the trial, no more illustrated what did actually occur at the store, than would any other casual, insignificant, and unrelated remark, and that this consideration is enough to take the case without the controlling influence of that line of cases cited by defendant to the point under discussion.

If, however, the declaration which defendant proposed to prove be held to shed light upon the circumstances of the homicide committed subsequently and after a distinct interval, as the majority of the court holds, then it was self-serving and was properly excluded on the authority of *Jones v. State,* 174 Ala. 53, 57 South. 31. It is a general rule of broad application that self-serving declarations are not admissible in behalf of the declarant.—*Martin v. Williams,* 18 Ala. 190; *Oliver v. State,* 17 Ala. 587. The propriety of applying the general rule of exclusion in this case is strongly indicated by the undisputed fact that, shortly before the declaration in question, defendant and deceased had been engaged in a serious difficulty, so that the declaration of intention, so far as it may possibly be held to relate to

deceased, had no element of spontaneity and was under grave suspicion of having been manufactured for the occasion. In the opinion of the writer, concurred in by McClellan and Somerville, JJ., the evidence was rejected without error. However, the majority of the court, consisting of Anderson, C. J., Mayfield, de Graffenried, and Gardner, JJ., holds there was error on the authority of the cases cited by appellant. They also hold that *Jones v. State, supra,* should be overruled.

Defendant testified that deceased had first assaulted him with a knife, and that one Howard had "taken out after him" and shoved him as if to help deceased. A knife was found near the body of deceased as he lay unconscious upon the floor where he fell after receiving fatal wounds at the hand of defendant. A witness for the state testified that defendant had returned to the spot and dropped the knife there. The testimony of Jeff Williams, a witness for defendant, to the effect that Howard had asked him to testify that the knife belonged to the defendant, which he refused to do, could have been admissible only to impeach Howard by showing his interest and activity in the prosecution. But Howard did not testify, and so was not the subject of impeachment. It was shown that he had gone to parts unknown.

The probative force of the testimony of Jeff Williams that, at some indefinite time in the past and for some indefinite period, he had worked the same loom, or in the same room, with defendant, and that the only knife he ever saw defendant with was a small pearl-handled knife, in view of the whole evidence, which we have not thought it necessary to state, was negligible, and we do not find reversible error in its exclusion.

Charge 2, refused to defendant, was well refused because it was self-contradictory.

Charges 3 and 6 were well refused because abstract. There is nothing in the evidence stated in the record to afford an inference that any witness exhibited at the trial or elsewhere prejudice or anger against defendant. Herein the case is to be distinguished from *Adams v. State,* 175 Ala. 8, 57 South. 591.

Charge 4 was well refused because it did not predicate the probability of innocence which would require an acquittal as arising out of the evidence. The substance of the charge with this needed amendment was given to the jury in charge 26.

The burden was not on the state, in the situation described in charge 10, to prove that deceased was free from fault in bringing on the fatal encounter, though it was open to the jury, upon belief of defendant's testimony, to find a state of facts which put upon the prosecution that burden in respect of defendant's fault.

We find no evidence in the record calling for a statement of the law proposed by charge 13. The charge was well refused because abstract.

The evidence did not present a case calling for a statement of the doctrine as to the right of accused to act upon the reasonable appearance of danger to life or limb. There were but two alternative findings possible, either defendant killed deceased without any demonstration of offense or defense, on the part of deceased, or deceased first made an actual assault upon defendant with a deadly weapon, as defendant testified. The case involved no question as to the reasonable appearance of a danger that did not in fact exist. In other words, charge 19 was abstract. This charge was approved in *Snyder v. State,* 145 Ala. 33, 40 South. 978, cited by defendant. The report of the case does not contain a statement of the relevant facts. The decision was based upon *Kennedy v. State,* 140 Ala. 1, 37 South. 90. We

presume, therefore, that there was in the *Snyder Case* some evidence of a hostile demonstration, short of an actual assault, as there was in *Kennedy v. State, supra,* where the record shows that deceased "seemed to draw" his pistol. These observations apply to a part of charges 36, 37, and 38.

Charge 27 asserts an abstract proposition, applicable to all cases where a person is attacked with murderous intent. But the proposition does not hold good in all cases. If a person provokes a difficulty, in the course of which his adversary makes a murderous attack upon him, he is not entitled to the benefit of the limitation upon the doctrine of retreat stated in the charge.— *Storey v. State,* 71 Ala. 329; *Abernathy v. State,* 129 Ala. 85, 29 South. 844.

Charge 30 combined the faults we have found in charges 19 and 27.

Charge 33 was properly refused. Defendant may have fired the fatal shot as the consequence, in part, of sudden passion aroused by a blow and yet have entertained malice. When this is the case, the homicide, otherwise indefensible murder, is not reduced to manslaughter by reason of the passion.—*Martin v. State,* 119 Ala. 1, 25 South. 255.

The state was not required to show that deceased was free from fault in bringing on the difficulty, as we have already pointed out. Charge A, as it is written in the record, was faulty because it asserts the contrary, and was for this reason refused without error.

Charge E was misleading. Defendant, under the evidence, was not entitled to the bald statement that he had a right to go to the store where the fatal difficulty occurred, because the state's evidence tended to show that he knew the deceased was there and went there with his mind bent upon mischief. In view of this tendency

of the evidence, the charge was misleading and defective because it did not hypothesize defendant's innocence of unlawful purpose in going to the store.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, DE GRAFFENRIED, and GARDNER, JJ., concur. MCCLELLAN, SOMERVILLE, and SAYRE, JJ., dissent.